No. 22-5735

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NICHOLAS SANDMANN, BY AND THROUGH HIS PARENTS AND NATURAL GUARDIANS,
TED SANDMANN AND JULIE SANDMANN
*Plaintiff-Appellant*

v.

CBS NEWS, INC., D/B/A CBSN; VIACOMCBS, INC.; AND CBS INTERACTIVE, INC.
*Defendants-Appellees*

---

On Appeal from United States District Court
for the Eastern District of Kentucky,
No. 2:20-cv-00024 (WOB)

## SUPPLEMENTAL BRIEF OF APPELLEES CBS NEWS INC.,
## PARAMOUNT GLOBAL f/k/a VIACOMCBS INC.,
## and CBS INTERACTIVE INC.

Natalie J. Spears
Gregory R. Naron
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-2481
natalie.spears@dentons.com
gregory.naron@dentons.com

Jessica Laurin Meek
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, Indiana 46204
Phone: (317) 635-8900
jessica.meek@dentons.com

*Counsel for Appellees CBS News Inc.,
Paramount Global f/k/a ViacomCBS
Inc., and CBS Interactive Inc.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................... iii

SUPPLEMENTAL COUNTERSTATEMENT OF ISSUES ................................... 1

SUPPLEMENTAL STATEMENT OF THE CASE .......................................... 2

    A. CBS's Report Sets Out to Provide Additional Context .................................. 2

    B. Sandmann's Lawsuit against CBS ............................................................ 6

SUMMARY OF ARGUMENT .................................................................. 8

ARGUMENT ........................................................................................... 8

    I.  Phillips' Statements to CBS Are Protected Opinion. ................................ 8

        A.  No Reasonable Viewer Would Understand Phillips' Perceptions to Be Statements of Objective Fact ......................................................... 8

        B.  Sandmann's New Appellate Arguments as to CBS Cannot Save His Claim ................................................................................................. 11

    II. Sandmann Proudly Admits Phillips' Statement Is Substantially True .......... 14

    III.The CBS Report Is Also Not Defamatory. .................................................. 15

CONCLUSION ........................................................................................ 19

CERTIFICATE OF COMPLIANCE ........................................................... 20

CERTIFICATE OF SERVICE .................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bannister v. Knox Cnty. Bd. of Educ.*,
  49 F.4th 1000 (6th Cir. 2022) ............................................................12

*Better Built Garages, Inc. v. Kentucky New Era, Inc.*,
  2008 WL 4531037 (Ky. Ct. App. Oct. 10, 2008) ...............................18

*Compuware Corp. v. Moody's Investors Servs., Inc.*,
  499 F.3d 520 (6th Cir. 2007) ..............................................................17

*Dermody v. Presbyterian Church U.S.A.*,
  530 S.W.3d 467 (Ky. Ct. App. 2017) ...........................................13, 18

*Friendship Empowerment & Econ. Dev. v. WALB-TV*,
  2006 U.S. Dist. LEXIS 27785 (M.D. Ga. May 10, 2006) ..................10

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
  398 U.S. 6 (1970) ..................................................................................9

*Haynes v. Alfred A. Knopf, Inc.*,
  8 F.3d 1222 (7th Cir. 1993) ..................................................................9

*McCall v. Courier-Journal & Louisville Times Co.*,
  623 S.W.2d 882 (Ky. 1981) ................................................................16

*Nat'l Rev., Inc. v. Mann*,
  140 S. Ct. 344 (2019) ..........................................................................19

*Riley v. Harr*,
  292 F.3d 282 (1st Cir. 2002) .........................................................11, 13

*Sandmann v. WP Co.*,
  401 F. Supp. 3d 781 (E.D. Ky. 2019) .................................................17

*Time, Inc. v. Pape*,
  401 U.S. 279 (1971) ............................................................................11

**Statutes**

18 U.S.C. § 245(b) ......................................................................................6

## **SUPPLEMENTAL COUNTERSTATEMENT OF ISSUES**

The CBS Appellees ("CBS") adopt the Counterstatement of Issues as presented in Appellees' Joint Brief.

## SUPPLEMENTAL STATEMENT OF THE CASE

Throughout this litigation, Plaintiff Nicholas Sandmann alleged that a "viral video" of his encounter with Native American Nathan Phillips at the National Mall omitted crucial context and thereby painted him as engaged in racist misconduct. Sandmann sued CBS over a single CBS report (the "Report") made two days after release of the viral video.[1]  The Report puts that viral video and the encounter into context—the same context Sandmann says was missing from the outset.  This context makes clear that Phillips' opinion of what happened on the Mall was only his opinion.  Even if it did not, the Report is not materially false and not defamatory. The District Court's opinion should be affirmed.

### A.    CBS's Report Sets Out to Provide Additional Context

In the viral video's aftermath, CBS sought to provide its viewers with a better understanding of the encounter.  RE60-3; RE60-4.  The result was the Report, originally streamed and published online on January 20, 2019.  It opened with CBS correspondent David Begnaud saying that viewers "may have seen a video that shows a group of high school students in what appears to be a standoff with a Native

---

[1] The Report consists of a video streamed on CBS's website on January 20, 2019, which was embedded in an article posted on CBSNews.com.  *See* Article, RE60-2, PageID#1204–07; RE60-3 (Segment); *see also* RE60-4 (Segment Transcript), PageID#1209–1216.  Copies of the Segment are included in the USB drive mailed to the Court (folder: "Video Exhibits in Case No. 22-5735"; filename: "DE 63– Exhibit A-2 to the Declaration of Helen D'Antona (CBS0000004))."

American man." RE60-4, PageID#1210. He then explained, "The problem is the story as originally reported is incomplete." *Id.* CBS had "more information that provides better context and depth to what actually happened." *Id.*

Begnaud then says, "Here's the original clip that most people saw." *Id.* The viral video plays on screen as Begnaud provides background, namely, "the Indigenous Peoples March coincided with the March for Life" and some students from a Catholic high school "were wearing hats that said 'Make America Great again.'" *Id.* While the video showed Sandmann, Begnaud explains that "[o]ne teenager in particular . . . was seen standing in the video just feet away from a man named Nathan Phillips," who was "banging on a drum and chanting a prayer." *Id.*

The Report then returns to Begnaud who says, "The problem is this video inflamed people" who thought Sandmann was disrespectful. *Id.*, PageID#1211. He adds that others heard the "students were chanting 'build the wall.'" *Id.* "The problem is," he explains, "there was another video nearly two hours in length, most of which we have seen." *Id.* The longer video then plays showing a group of Black Hebrew Israelites ("BHI") gathered and Phillips approaching the students. *Id.* That video, Begnaud adds, provided additional "context" that "suggests that the story is not as originally reported." *Id.*



*The Report Playing the Longer Video*

The longer video then plays while Begnaud reports that CBS "never heard the students saying 'Build that wall.'" *Id.* Instead, he says, CBS "heard . . . a chant among the students that appeared to be a sports chant," again referencing the "problem" with the viral video and early social media before turning to explain how the encounter "started." *Id.* First, he says, BHI "start yelling profanities at the high school students," which "went on for some period of time." *Id.* Next, while video plays showing Phillips walking towards the students, Begnaud reports that "Phillips walks into the middle of the group" and "[i]nserts himself in the situation." *Id.*

The Report then cuts back to Begnaud: "We wanted to talk to the students, the parents, but also Mr. Phillips. We were able to get Mr. Phillips on the phone and here's some of what he told us." *Id.*, PageID#1211–12. During the five-minute interview, videos of the encounter play, including stipulated Video 16 showing an aerial view (and the "pathway" Sandmann claims Phillips could have taken around him). Compl. ¶ 50, RE1, PageID#11. Begnaud asks Phillips several questions,

4

including: "I want to make sure I am understanding you correctly . . . you stepped in the middle, is that correct?"; "Did you say anything to him?" (i.e., Sandmann); "How long did this last?"  RE60-4, PageID#1213–14.

In response to the question "Did he ever say anything to you?", Phillips answers: "No, he didn't say nothing.  He just stood in front of me, and when the others were moving aside and letting me go, he decided that he wasn't going to do that."  *Id.*, PageID#1214.  He adds, "You know, I tried to, when I was coming up the steps, I seen him start putting himself in front of me, so I slided to the right, and he slided to the right.  I slided to the left and he slided to the left—so by the time I got up to him, we were right in front of him."  He ends saying, "He just positioned himself to make sure that he aligned himself with me, so that sort of stopped my exit."  *Id.*

The Report cuts back to Begnaud who reminds the viewer, again, that "the original story was incomplete" and he hoped viewers had "more context."  *Id.*, PageID#1216.  He closes saying that, at that time, the school was "saying that the students could be disciplined, possibly even expelled, but the video as we've seen it, shows Mr. Phillips walking into the group inserting himself."  *Id.*

That Segment was also embedded in an online article that included Sandmann's press release statements about the "standoff": "Sandmann said he didn't speak to Phillips, nor did anyone block his path" and "was confused as to why

5

Phillips approached him."  RE60-2, PageID#1206.  CBS further reported that Sandmann "was 'startled and confused' as to why he had approached him after they were yelled at by the other protesters."  *Id.*

## B.    Sandmann's Lawsuit against CBS

More than a year later, on March 2, 2020, Sandmann sued CBS, alleging that the Report cast him as "the face of an unruly hate mob of hundreds of white, racist high school students."  RE1, PageID#2, ¶ 5.  He alleged that CBS republished "a false and defamatory factual narrative" accusing him of "racist misconduct" by reporting that he "confronted and threateningly stopped Phillips."  *Id.* ¶¶ 1, 3, 6 (citing 18 U.S.C. § 245(b) (hate crime prohibition)).  He claimed that this defamatory meaning stemmed, in part, from Phillips' view that Sandmann "'positioned himself,'" "'aligned himself,'" and "'put[] himself in front of [Phillips],'" thereby "stop[ping] [Phillips'] exit."  *Id.* ¶ 4.

Sandmann also included numerous false allegations about the Report in his Complaint.  He alleged that CBS (1) relied on an "incomplete and out-of-context video," *id.* ¶¶ 15, 19, when, in fact, CBS reported the viral video was a "problem" because it lacked "context," RE60-4, PageID#1210, 1211, 1216; (2) "ignored" the "truth contained in the full-length video," RE1, ¶¶ 16, 82, when CBS reported that "another video nearly two hours in length" had surfaced and then played parts of that video, RE60-4, PageID#1211; (3) reported the "false accusation" that the

6

students chanted "Build that Wall," RE1, ¶¶ 23–24, when CBS reported it did not hear the students chant that, RE60-4, PageID#1211; (4) ignored that BHI confronted the students with "slurs," RE1, ¶¶ 11, when CBS reported the encounter started when BHI yelled profanities at them, RE60-4, PageID#1211; and (5) ignored that Phillips approached the students, RE1, ¶ 9, when CBS reported Phillips "insert[ed] himself" into the situation, RE60-4, PageID#1211.

Discounting these mischaracterizations, Sandmann's defamation claim now boils down to the actionability of a single statement in the Report that the parties and the court below treated as materially similar to the "Blocking Statements": Phillips' statement that Sandmann "positioned himself" in front of him to "sort of stop[] [his] exit." RE1, ¶¶ 4, 105. The only legal issues before this Court are whether that statement is (1) protected opinion insofar as it conveys Phillips' views as to the encounter and not objective facts about it, (2) materially false, or (3) susceptible of the defamatory meaning that Sandmann engaged in racist misconduct. Below, the court concluded that the challenged statement was non-actionable opinion, entering judgment for CBS.

## SUMMARY OF ARGUMENT

*"[W]hen the others were moving aside and letting me go,*
*he decided that he wasn't going to do that."*
– Nathan Phillips to CBS News

*"The man played his drum in my face but unlike others*
*at my school I didn't step out of the way."*
– Deposition of Nicholas Sandmann[2]

This $60 million dollar defamation case against CBS is based on a non-defamatory news report containing only non-actionable opinions or otherwise admittedly true statements. Judgment for CBS should be affirmed for the reasons set forth in the Joint Brief, which CBS adopts in full. Judgment should also be affirmed for additional reasons specific to the CBS Report, as set forth below.

## ARGUMENT

I.     **Phillips' Statements to CBS Are Protected Opinion.**

A.     **No Reasonable Viewer Would Understand Phillips' Perceptions to Be Statements of Objective Fact.**

Sandmann's assertion that his opinion of the encounter is "true" but Phillips' is "false" is without merit. *See* Appellant's Br., PageID#18. The court below recognized that a statement, like Phillips' here, reflects one's perception of another's intent and, as such, "is not capable of being proven true or false." RE90, PageID#

---

[2] *See* RE60-2, PageID#1206; Joint Brief, 20.

8

2878 (citing, *e.g.*, *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).  That holding is correct.

From where he stood, Phillips believed that Sandmann unlike others around him "decided" he was not going to move aside and let Phillips go.  He thought Sandmann "positioned himself to make sure that he aligned himself" in a way that "sort of stopped" his exit.  RE60-2, PageID#1206.  Though Sandmann describes his intentions differently, that does not make Phillips' perceptions *factually* incorrect. As the court below explained, reasonable viewers "would see there is ample room for a different interpretation of the evidence."  *See* RE 90, PageID#2874.

Were there any doubt as to whether Phillips was offering his perspective, the Report's context makes clear that Phillips' view of the encounter was just one of many, likely competing, views.  *E.g.*, RE60-4, PageID#1211–12 ("We wanted to talk to the students, the parents, but also Mr. Phillips.").  In other words, the Report presented Phillips' "first-person view of what he experienced" during the encounter, while flagging for the viewer that others might view things differently.  RE90, PageID#2879; *see also Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970) (courts must, as a constitutional matter, consider the "circumstances" of the alleged defamation).

Were that not enough, CBS also provided context in the form of videos.  CBS showed clips of the longer video that Sandmann says shows "[t]he truth," including

9

the added context that Phillips approached the students.  RE1, ¶¶ 9, 250.  It also

played another video showing the alleged pathway (which Sandmann incorrectly

contends CBS ignored, *see* Appellant's Br., PageID#14–15) that Sandmann thinks

Phillips could have taken to get around him:



RE60-3 (at 3:32, 3:30).  With this additional context, a viewer watching the Report

could assess Phillips' opinions in real time.  *See Friendship Empowerment & Econ.*

*Dev. v. WALB-TV*, 2006 U.S. Dist. LEXIS 27785, at *13–14 (M.D. Ga. May 10,

2006) (finding differing views as to what surveillance video showed in newscast to

be opinions based on disclosed facts); *see also* Joint Brief, 36–37 and 46–47 (citing

cases).  These videos and other disclosed facts in the Report put the viewer "in as good

a position" as Phillips to "judge" whether Sandmann "sort of stopped" Phillips' exit.

While this Court need not conclude Phillips' opinion is reasonable to affirm, it is worth emphasizing that Sandmann has. *See infra* § II. Sandmann testified that "unlike others" he was not going to "step out of the way." Joint Brief, 20–21. Instead, Sandmann said, he was going to "face up" to Phillips. *Id.*, 21. That is precisely (and unsurprisingly) how Phillips perceived Sandmann's conduct during an admittedly chaotic encounter. *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971). Indeed, Sandmann *agrees* that Phillips "could have perceived that it was [Sandmann's] intention to stop his path forward." Joint Brief at 24; *Riley v. Harr*, 292 F.3d 282, 290 (1st Cir. 2002).

For these reasons, the District Court's opinion should be affirmed.

## B.     Sandmann's New Appellate Arguments as to CBS Cannot Save His Claim.

Given the District Court's well-reasoned opinion, Sandmann takes a new tack on appeal by focusing on Phillips' few words to CBS that he and Sandmann "slid" to the right or left before they met face-to-face to attempt to make Phillips' statements to CBS appear, in a vacuum, more like a false assertion of fact than an opinion. But this argument does not defeat the District Court's reasoned conclusion that Phillips' statement to CBS was nonactionable opinion for four reasons: this argument (1) was waived; (2) ignores the context of the Report; (3) ignores the uncontested record; and (4) is a red herring.

First, Sandmann never argued in opposition to summary judgment and therefore waived or at a minimum forfeited the argument that "sliding" is the crux of his claim—let alone *the* reason why Phillips' perception that Sandmann "positioned himself" to "sort of stop his exit" could not be considered opinion. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) ("waiver occurs when a party intentionally abandons a known right" even when raised at earlier stage in the proceeding; "forfeiture" occurs when an argument is not raised below). Sandmann not only failed to raise this argument in opposition to summary judgment, *see* RE69; RE70, PageID#12–13, he *affirmatively* treated Phillips' statements to CBS as indistinguishable from the other "Blocking Statements," RE90, PageID#15, n.10 (explaining "the parties apply the same analysis" to all Blocking Statements). On this basis, any attempt to raise this issue now should be rejected.

Next, Sandmann's myopic focus on a few words in the Report defies a basic principle of defamation law: context matters. *See* Appellant's Br., PageID#20 ("*Milkovich* requires courts to focus . . . on the entire context[.]"). Here, the context of the entire Report makes clear that Phillips' statements, including those about sliding, were *his* interpretation (not the only interpretation) of what Sandmann admits was a "weird" or "odd encounter." Appellant's Br. at 11, 13; RE60-4, PageID#1211–12 (Begnaud explaining he "wanted to talk to the students, the parents, but also Mr. Phillips").

This new argument also ignores facts in the record as it presupposes that "sliding" constitutes a *materially false fact*. But, at his deposition, Sandmann admitted that he adjusted his footing and may have slid at least one direction, only questioning how many inches he slid. Joint Brief, 39–40, n.10 ("I moved six inches at the most."); *see also infra* § II. At minimum, Sandmann's admissions confirm that there "could easily be a number of varying rational interpretations" of his movements, which is precisely why offering one's "personal perspective about some of the ambiguities and disputed facts" cannot be the basis for a defamation action. *Riley*, 292 F.3d at 290.

Finally, whether Sandmann slid is not the proper focus of defamation inquiry. Sandmann's racist misconduct claim has always been grounded in whether Phillips' statement that Sandmann intentionally "positioned" himself to "sort of stop[] [his] exit"—not in *how* he positioned himself. Phillips' assessment of Sandmann's intent based on what Phillips perceived is quintessentially an opinion. *See supra* § I.A. This Court should reject Sandmann's focus on whether some subsidiary non-defamatory detail was provably false for what it is: irrelevant misdirection. *See Dermody v. Presbyterian Church U.S.A.*, 530 S.W.3d 467, 472 (Ky. Ct. App. 2017) ("A statement that is false, but not defamatory is not actionable.").

For these reasons, the challenged statement in the Report is protected opinion, and judgment should be affirmed.

**II.    Sandmann Proudly Admits Phillips' Statement Is Substantially True.**

This Court can also affirm on the alternative ground that the Report's challenged positioning/exit statement is not materially false.  This case, and each of the others, is based on the false premise that Sandmann did not "intend" to put himself in front of Phillips.  Yet, *Sandmann has admitted that was exactly his aim*.  He admitted it shortly after the encounter in private messages produced in discovery and later confirmed it under oath:

- Hours after the encounter, Sandmann sent an unsolicited Twitter "Direct Message" to conservative activist Charlie Kirk explaining, "The man played his drum in my face but unlike others . . . i didn't step out of the way because he was trying to intimidate us."  Joint Brief, 20–21.

- In another contemporaneous message, a friend texted Sandmann, "Can I ask what made you stand in front of the Indian guy." *Id.*, 20.  To which Sandmann replied, "[T]he whole thing with the black people calling us things and the guy moving through the crowd trying to intimidate us." *Id.*  "[I]t just made me want to stand up for the school," Sandmann added. *Id.*

- Then, at his deposition, Sandmann openly confessed, "I figured was it time for someone to *plant their foot* and stand there where I had been and *just face*

*up*. And to me, that was standing up for the school, because *I wasn't going to move*." *Id.*, 21 (emphases added).[3]

In the face of this, the Report is not actionable because Sandmann openly admitted that he intended to do exactly what Phillips' conveyed to CBS: "He just *stood in front of me*, and *when the others were moving aside and letting me go, he decided that he wasn't going to do that*," RE60-4, PageID#1214, or "*by the time I got up to him*, we were right in front of him. He just *positioned* himself to *make sure that he aligned himself with me, so that sort of stopped my exit*." *Id.* (emphases added). In short, Sandmann has expended significant judicial resources on a defamation case about an opinion that he does not even disagree with, at least not on any material basis—and the gist of which, in all events, he freely acknowledges is not materially false.

## III.    The CBS Report Is Also Not Defamatory.

Were all this not enough, this Court may separately affirm based on another fundamental deficiency in Sandmann's claim: Sandmann alleges the Report is defamatory because it accuses him of racist misconduct, RE1, ¶¶ 1, 6, 214, even though it affirmatively dispels any such allegation.

---

[3] As with opinion, sliding is not the proper focus of the truth inquiry. Whether Sandmann slid six inches or more as he adjusted his footing to "plant down" (as others moved out of the way) is irrelevant because the gist of the statements—that he deliberately stood in Phillips' way—is substantially true by his own admission.

15

As explained in the Joint Brief, when considering whether a challenged statement has the defamatory meaning alleged, the words used "must be measured by their natural and probable effect on the mind of the average lay reader." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981); *see also* Joint Brief, 62–64 (citing cases). Here, no average viewer would understand the Report as accusing Sandmann of racist misconduct.

Sandmann alleges that the imputation of racist misconduct in the Report stems from Phillips' statement to Begnaud that Sandmann "positioned himself" in front of Phillips such that he "sort of stop[ped] [his] exit" juxtaposed against two other things he says have racist undertones. First, he alleges CBS "prominently" featured the Make America Great Again hats. RE1, ¶ 173. Second, he alleges CBS reported that students chanted "Build the Wall." *Id.*, ¶¶ 167–69. From this, Sandmann argues a viewer would have equated the allegation that he positioned himself in front of Phillips to an allegation of racist misconduct. *Id.*, ¶ 6; *see also* Appellant's Br. PageID#12–13.

This argument is meritless. No viewer would understand the Report to accuse Sandmann of racist misconduct because the juxtaposition on which Sandmann relies does not exist. *Nowhere* does the Report state that anyone chanted "Build that Wall." In fact, to the contrary, CBS reported it heard sports chants. RE60-4, PageID#1211. *Nowhere* does the Report "prominently" feature MAGA hats. In fact, Begnaud only

16

references the hat to set the stage for viewers to explain the "problem" with earlier reporting.  RE60-4, PageID#1210, 1211.  Sandmann cannot transplant racist allegations into the Report that do not exist. *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) ("Compuware has not even shown that an objective reader of the ratings report might discern these hidden implications; . . . only a 'strained reading' of the report would permit the inferences Compuware would have us draw.").[4]

Because the sole "facts" that underlie Sandmann's racist misconduct theory are missing, his entire claim necessarily fails.  Indeed, Sandmann does not argue this defamatory meaning from any other part of the Report, nor could he considering what the Report actually contains.  The Report (1) plays the longer video Sandmann says provides critical context; (2) reports Phillips was the one who approached Sandmann; (3) reports Phillips saying the students were not "aggressive toward the indigenous people"; (4) reports Phillips saying Sandmann stood silently in front of him at times looking concerned; and (5) reports Sandmann's views that no one was "blocked."  RE60-4, PageID#1211–12, 1214–15; RE60-2, PageID#1206.  Given this

---

[4] Even if the Report had stated that students chanted "Build that Wall" (rather than dispelling that notion), the Report would still lack defamatory meaning without an accusation that Sandmann himself made that statement, and more fundamentally, because mainstream political slogans (such as "Build the Wall" or "MAGA") do not carry "unmistakable" allegations of racism. *Sandmann v. WP Co.*, 401 F. Supp. 3d 781, 791, 795 (E.D. Ky. 2019).

"context and depth," Sandmann's hyperbolic allegations that CBS' reporting constituted a "campaign to bully . . . and vilify" him fall flat.

Nor can Sandmann rest his case on defamatory meaning on Phillips' lone allegation that Sandmann "positioned" himself in front of Phillips to "sort of stop[] [his] exit." RE1, ¶ 4. Under Sandmann's own theory, this statement is not defamatory because no reasonable viewer would understand "positioning" alone to be an allegation of racist misconduct. RE1, ¶¶ 165–73. In other words, as Sandmann apparently agrees, there is nothing inherently racist about positioning oneself with another without something more. This is especially so where Sandmann testified that he purposefully stood in front of Phillips to exercise a legal right to stand his ground, which is not defamatory. Joint Brief, 20–21; *Better Built Garages, Inc. v. Kentucky New Era, Inc.*, 2008 WL 4531037, at *2 (Ky. Ct. App. Oct. 10, 2008) (exercising legal rights is not defamatory).

Sandmann finally rests his case not on the Report at all, but on ambiguous, societal prejudices, claiming that in our "heated political climate" the encounter carried "unmistakable connotations of racism." Appellant's Br., PageID#12–13. But CBS is responsible for what it reports, not for how the public might react to an underlying controversy. *Dermody*, 530 S.W.3d at 474 (rejecting as not "convincing" argument that court may consider society's misunderstanding of true facts to find statement actionable). Were it otherwise, the press could not report on the most

18

controversial issues of our time. *Nat'l Rev., Inc. v. Mann*, 140 S. Ct. 344, 348 (2019) (Alito, J., dissenting from denial of certiorari) (warning against threats to press freedom from litigation over "allegedly defamatory speech concern[ing] a political or social issue that arouses intense feelings"). For good reason, that is not the law.

## **CONCLUSION**

For any of the foregoing reasons, judgment should be affirmed.

Dated: December 23, 2022                    Respectfully submitted,


                                            */s/ Natalie J. Spears*
                                            Natalie J. Spears
                                            DENTONS US LLP
                                            233 South Wacker Drive, Suite 5900
                                            Chicago, Illinois 60606
                                            Phone: (312) 876-2481
                                            natalie.spears@dentons.com

                                            *Counsel for CBS*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation set in the Court's October 12, 2022 order regarding consolidation and briefing schedule, because it contains 3,997 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

> */s/ Natalie J. Spears*
> *Counsel for Appellees CBS News Inc.,*
> *Paramount Global f/k/a ViacomCBS Inc.,*
> *and CBS Interactive Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2022, I electronically filed the foregoing Supplemental Brief with the Court using the CM/ECF system upon the following counsel of record:

> Todd V. McMurtry
> Jeffrey A. Standen
> J. Will Huber
> HEMMER DEFRANK WESSELS, PLLC
> 250 Grandview Drive, Suite 500
> Fort Mitchell, Kentucky 41017
> Phone: (859) 344-1188
> Fax: (859) 578-3869
> tmcmurtry@hemmerlaw.com
> jstanden@hemmerlaw.com
> whuber@hemmerlaw.com

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: December 23, 2022

<div style="margin-left:40%">

*/s/ Natalie J. Spears*
Natalie J. Spears
*Counsel for Appellees CBS News Inc.,*
*Paramount Global f/k/a ViacomCBS Inc.,*
*and CBS Interactive Inc.*

</div>